# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

PATRICK HUFFORD and JOHN WISBISKI,
individually and on behalf of all others similarly
situated,

Plaintiffs,

v.

MAXIM INC.,

Defendant.

Civil Action No. 19-cv-04452-ALC-RWL

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: May 7, 2020

**BURSOR & FISHER, P.A.**

Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
          pfraietta@bursor.com

**HEDIN HALL LLP**

Frank S. Hedin*
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinhall.com
*Admitted *Pro Hac Vice*

*Proposed Class Counsel*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................................3

    A.    Michigan's Preservation Of Personal Privacy Act...............................................3

    B.    Plaintiffs' Allegations ...........................................................................................3

    C.    The Litigation History And Settlement Discussions ...........................................4

TERMS OF THE SETTLEMENT ........................................................................................6

    A.    Class Definition .....................................................................................................6

    B.    Monetary Relief.....................................................................................................6

    C.    Release ...................................................................................................................7

    D.    Notice And Administration Expenses ...................................................................7

    E.    Service Awards ......................................................................................................7

    F.    Attorneys' Fees, Costs, And Expenses .................................................................7

ARGUMENT .........................................................................................................................7

I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS
    APPROPRIATE ...........................................................................................................7

    A.    The *Grinnell* Factors..........................................................................................10

        1.    Litigation Through Trial Would Be Complex, Costly, And
            Long (*Grinnell* Factor 1) ...........................................................10

        2.    The Reaction Of The Class (*Grinnell* Factor 2) .........................11

        3.    Discovery Has Advanced Far Enough To Allow The
            Parties To Responsibly Resolve The Case (*Grinnell* Factor
            3) ..................................................................................................11

        4.    Plaintiffs Would Face Real Risks If The Case Proceeded
            (Grinnell Factors 4 And 5) .........................................................12

        5.    Establishing A Class And Maintaining It Through Trial
            Would Not Be Simple (*Grinnell* Factor 6).................................12

        6.    Defendant's Ability To Withstand A Greater Judgment
            (*Grinnell* Factor 7)......................................................................13

        7.    The Settlement Amount Is Reasonable In Light Of The
            Possible Recovery And The Attendant Risks Of Litigation
            (*Grinnell* Factors 8 And 9) ........................................................13

    B.    The Rule 23(e)(2) Factors ...................................................................................14

        1.    The Class Representatives And Class Counsel Have
            Adequately Represented The Class (Rule 23(e)(2)(A) ................14

        2.    The Settlement Was Negotiated At Arm's-Length.......................15

        3.    The Settlement Provides Adequate Relief To The Class .............15

        4.    The Settlement Treats All Class Members Equally......................17

II.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS
       APPROPRIATE ..................................................................................................... 17
       A.    Numerosity ................................................................................................ 19
       B.    Commonality ............................................................................................. 19
       C.    Typicality .................................................................................................. 21
       D.    Adequacy Of The Named Plaintiffs ........................................................ 22
             1.    Common Questions Predominate ................................................... 24
             2.    A Class Action Is A Superior Mechanism ..................................... 25
III.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS
       COUNSEL ............................................................................................................ 25
IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM
       AND SUBSTANCE ............................................................................................. 26
CONCLUSION ............................................................................................................... 27

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................. 17, 24, 25

*Brown v. Title Ticor Ins. Co.,*
  982 F.2d 386 (9th Cir. 1992) ............................................................................. 24

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ........................................................................... 9, 14

*City of Providence v. Aeropostale, Inc.,*
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................... 16

*Clark v. Ecolab, Inc.,*
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................................................... 16

*Consol. Rail Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995) ................................................................................. 19

*Coulter-Owens v. Time, Inc.*
  14-CV-12688 (E.D. Mich.) ................................................................................... 1

*Coulter-Owens v. Time, Inc.,*
  308 F.R.D. 524 (E.D. Mich. 2015) ................................................................ 20, 22

*County of Suffolk v. Long Island Lighting Co.,*
  710 F. Supp. 1422 (E.D.N.Y. 1989) ................................................................... 18

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) ............................................................................... 22

*Dziennik v. Sealift, Inc.,*
  2007 WL 1580080 (E.D.N.Y. May 29, 2007) .................................................... 22

*Ebin v. Kangadis Food Inc.,*
  297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................. 22, 23

*Edwards v. Hearst Communications, Inc.,*
  15-CV-09279 (S.D.N.Y.) ................................................................................. 1, 2

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ........................................................................................... 26

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................Passim

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)...........................................................................................19

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)...........................................................14

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)................................................................................25

*Groover v. Prisoner Transportation Servs., LLC*,
  2019 WL 3974143 (S.D. Fla. Aug. 22, 2019)..........................................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)..................................................................17, 19, 25

*Hayes v. Harmony Gold Min. Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011)...........................................................16

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................10, 12, 13

*In re BankAmerica Corp. Secs. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002)............................................................................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007)............................................................8

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)..............................................................................17, 18

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................14, 15, 16

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)............................................................14, 15, 17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019)...........................................................10

*In re Prudential Insur. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997)............................................................................25

*In re Traffic Executive Ass'n*,
  627 F.2d 631 (2d Cir. 1980)..................................................................................8

*In re Visa Check/MasterMoney Antitrust Litig.*,
 280 F.3d 124 (2nd Cir. Oct. 27, 2001)..................................................................25

*Joel A. v. Giuliani*,
 218 F.3d 132 (2d Cir. 2000) ..............................................................................17

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
 333 F.R.D. 314 (S.D.N.Y. 2019) ..........................................................................9

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
 109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................20

*Kinder v. Meredith Corp.*,
 14-CV-11284 (E.D. Mich.) ....................................................................................1

*Kinder v. Meredith Corp.*,
 2016 WL 454441 (E.D. Mich. Feb. 5, 2016)......................................................20

*Luczak v. Nat'l Beverage Corp.*,
 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) .....................................................23

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2nd Cir. Sept. 26, 1997)..............................................................21

*Martens v. Smith Barney Inc.*,
 181 F.R.D. 243 (S.D.N.Y. 1998) ...................................................................22, 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
 67 F.3d 1072 (2d Cir. 1998) .................................................................................8

*McBean v. City of New York*,
 228 F.R.D. 487 (S.D.N.Y. 2005) .........................................................................24

*Meredith Corp. v. SESAC, LLC*,
 87 F. Supp. 3d 650 (S.D.N.Y. 2015)....................................................................17

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,
 15-CV-05671 (S.D.N.Y.) ........................................................................................2

*Moeller v. American Media, Inc..*,
 16-CV-11367 (E.D. Mich.) .....................................................................................2

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ...............................................................................13

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999)............................................................................................24

*Parker v. Time Warner Entertainment Co.*,
  239 F.R.D. 318 (E.D.N.Y. 2007)................................................................20

*Perin v. Times, Inc.*,
  16-CV-10635 (E.D. Mich.) ..........................................................................1

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
  698 F.2d 150 (2d Cir. 1983) ......................................................................19

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)............................................16

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...............................................................19, 21

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986) ......................................................................24

*Ruppel v. Consumers Union of the United States, Inc.*,
  16-CV-02444 (S.D.N.Y.) ..............................................................................2

*Taylor v. Trusted Media Brands, Inc.*,
  16-CV-01812 (S.D.N.Y.) ..............................................................................1

*TBK Partners, Ltd. v. Western Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981).............................................................10

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*,
  2004 WL 2997957 (S.D.N.Y. May 14, 2004) ............................................14

*Torres v. Gristede's Oper. Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................................11

*Toure v. Cent. Parking Sys.*,
  2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...........................................22

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ..............................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................19, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................................7, 8

**STATUTES**

28 U.S.C. § 1715 ...........................................................................................27

M.C.L. § 445.1712...........................................................................................................3

**RULES**

Fed. R. Civ. P. 12 ..........................................................................................................4

Fed. R. Civ. P. 23 ....................................................................................................Passim

Fed. R. Civ. P. 26 .......................................................................................................4, 5

**OTHER AUTHORITIES**

Newberg on Class Actions (4th ed. 2002) .........................................................Passim

**INTRODUCTION**

In this putative class action, Plaintiffs Patrick Hufford and John Wisbiski ("Plaintiffs") challenge Defendant Maxim Inc.'s ("Maxim" or "Defendant") systematic practice of violating the Michigan Preservation of Personal Privacy Act (the "PPPA") by disclosing its customers' magazine subscription histories and personal reading habits to third parties without notice or consent. After about a year of hard-fought litigation, the Parties have reached a class action settlement that, if approved, will resolve Plaintiffs' and the putative class' PPPA claims against Maxim.

The proposed Settlement comes after a lengthy pre-filing investigation, efficiently prosecuted litigation, and months of contentious, arm's-length negotiations between the Parties. Under the terms of the Settlement, Maxim has agreed to establish a $228,165 non-reversionary Settlement Fund, from which every Settlement Class Member (except for those who submit requests for exclusion from the Settlement) will *automatically* receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $53. By any reasonable measure, the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

The Court need not evaluate the Settlement in a vacuum, since it follows examples set by those that came before it. *See Perlin v. Time, Inc.*, No. 16-cv-10635, Dkt. 51 (E.D. Mich.) (approving class action settlement that was expected to pay between $25 to $50 per claimant); *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812, Dkt. 87 (S.D.N.Y.) (approving class action settlement that paid approximately $41 per claimant); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, Dkt. 54 (E.D. Mich.) (approving class action settlement that paid approximately $42 per claimant); *Kinder v. Meredith Corporation*, No. 14-cv-11284, Dkt. 72 (E.D. Mich.) (approving class action settlement that paid approximately $50 per claimant); *Edwards v. Hearst*

*Communications, Inc.*, No. 15-cv-09279, Dkt. 314 (S.D.N.Y.) (approving class action settlement that paid approximately $98 per claimant); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671, Dkt. 143 (S.D.N.Y.) (approving class action settlement that paid approximately $82 per claimant); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, Dkt. 99 (S.D.N.Y.) (approving class action settlement that paid approximately $109 per claimant); *Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. 42 (E.D. Mich.) (approving class action settlement that paid approximately $100 per claimant).

The proposed Settlement in this case outperforms the previously approved settlements cited above, both in structure and per-class member recovery.  Unlike the prior PPPA settlements cited above, this Settlement does not require Settlement Class Members to submit claim forms, and instead provides *automatic* cash payments to every class member who does exclude him or herself.  Thus, unlike in past PPPA settlements where 80%-90% of settlement class members did not submit claim forms and thus did not receive cash payments, in this case every non-excluded Settlement Class member will receive a cash payment upon final approval of the proposed Settlement.  Simply put, the automatic, per-class member relief secured by this Settlement marks an excellent result for the Settlement Class.

Given the exceptional relief secured on behalf of the Class, the Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Bursor & Fisher, P.A. and Hedin Hall LLP as Class Counsel; (4) appoint Patrick Hufford and John Wisbiski as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and

Proposed Settlement (the "Proposed Notice"), attached as Exhibits A-C to the Settlement

Agreement, and direct distribution of the Proposed Notice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   Michigan's Preservation Of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to

the purchase, rental, or borrowing of written materials, sound recordings, and video recordings."

First Amended Complaint (Dkt. 45) ("FAC") Ex. B.  As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the
> business of selling at retail . . . books or other written materials . . .
> shall not disclose to any person, other than the customer, a record
> or information concerning the purchase . . . of those materials by a
> customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of

statutory damages in the amount of $5,000, plus costs and reasonable attorneys' fees.  *See id.*

§ 445.1715.

### B.   Plaintiffs' Allegations

Maxim is an international media company that publishes *Maxim* magazine.  *See* FAC ¶ 1.

Plaintiffs allege that between May 15, 2016 and July 30, 2016, Maxim disclosed information

related to its customers' magazine subscription histories and personal reading habits.  *Id.* ¶¶ 1-3,

6, 43-50.  To increase the value of such information, Plaintiffs allege that Maxim traded its

customers' protected reading information with certain third parties – including data mining

companies – in exchange for other demographic and lifestyle data that such companies have

already gathered (or "mined") on each subscriber.  *Id.* ¶¶ 6, 43-45.  Plaintiffs further allege that

Maxim thereafter "enhanced" its own customer profiles with this additional data, and then

allegedly disclosed the enhanced information to other unrelated third parties for a profit.  *Id.*

Plaintiffs further allege that no matter how consumers subscribe (*i.e.*, via postcard, over the phone, or on Maxim's website), Maxim's customers never provided consent to disclose information related to their magazine subscriptions to third parties. *Id.* ¶¶ 6, 47-48.  This is because – during the subscription process – Plaintiffs claim that customers are not required to consent to any terms or policies informing them of Maxim's disclosure practices. *Id.*

### C.    The Litigation History And Settlement Discussions

On May 15, 2019, Luther Huguelet filed a putative class action on behalf of Maxim subscribers alleging violations of the PPPA.  *See* Declaration of Philip L. Fraietta In Support Of Plaintiffs' Motion For Preliminary Approval ("Fraietta Decl.") ¶ 4 (citing Dkt. 1).  In response to the complaint, on August 23, 2019, Defendant filed an Answer denying the allegations generally and raising 13 affirmative defenses. *Id.* ¶ 5 (citing Dkt. 21).  Defendant also filed a letter requesting a pre-motion conference on an anticipated motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  *Id.* ¶ 6 (citing Dkt. 22).  On August 28, 2019, Mr. Huguelet filed a response to Defendant's letter. *Id.* ¶ 7 (citing Dkt. 25).

On September 18, 2019, the Parties conducted a discovery planning conference pursuant to Fed. R. Civ. P. 26(f).  *Id.* ¶ 8.  On September 24, 2019, the Parties filed a Joint Case Management Statement.  *Id.* ¶ 9 (citing Dkt. 28).  On October 1, 2019, the Court held an Initial Case Management Conference.  *Id.* ¶ 10.

On October 8, 2019, Mr. Huguelet filed a letter-motion for leave to file an amended complaint to add Plaintiffs Hufford and Wisbiski as named plaintiffs in this case.  *Id.* ¶ 11 (citing Dkt. 36).  On October 18, 2019, Defendant filed a letter brief in opposition to Mr. Huguelet's letter-motion to amend.  *Id.* ¶ 12 (citing Dkt. 42).  On October 24, 2019, the Court granted Mr. Huguelet's letter-motion for leave to file an amended complaint.  *Id.* ¶ 13 (citing Dkt. 43).  On October 25, 2019, the Court denied Defendant's request for a pre-motion conference concerning

its anticipated motion for judgment on the pleadings without prejudice, in light of the order granting leave to amend. *Id.* ¶ 14 (Dkt. 44).

On October 30, 2019, Plaintiffs filed a First Amended Complaint removing Mr. Huguelet as a Class Representative in this case. *Id.* ¶ 15 (citing Dkt. 45). On November 13, 2019, Defendant filed an Answer to Plaintiffs' First Amended Complaint denying the allegations generally and raising 13 affirmative defenses. *Id.* ¶ 16 (Dkt. 48). Thereafter, the Parties commenced discovery, which included the exchange of written discovery and initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). *Id.* ¶¶ 17-20.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *Id.* ¶ 21. To that end, on January 9, 2020, counsel for the Parties met in-person for approximately 1 hour to discuss potential resolution. *Id.* ¶ 22. During the meeting, counsel for the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, Defendant's purported notices of the disclosures, and details of Plaintiffs' subscription histories. *Id.* While counsel engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach an agreement that day. *Id.* However, the Parties agreed that further negotiations would be beneficial, and agreed to continue their negotiations over the coming weeks. *Id.*

As part of the settlement negotiations, the Parties exchanged further informal discovery, including on issues such as the size and scope of the putative class. *Id.* ¶ 23. Given that the information exchanged would have been the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 24.

Over the next few weeks, the Parties engaged in settlement negotiations and on February

18, 2020, after making substantial progress in those negotiations, filed a joint letter-motion requesting a 30-day stay of discovery to focus their efforts on settlement discussions. *Id.* ¶ 25 (citing Dkt. 56). The Court granted that request the same day. *Id.* (citing Dkt. 57).

On March 22, 2020, after engaging in continued negotiations, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet. *Id.* ¶ 26. The next day, the Parties filed a joint letter to inform the Court that they had reached agreement on all material terms. *Id.* ¶ 27 (citing Dkt. 58).

## TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (the "Settlement" or the "Agreement"), attached as Exhibit A, are briefly summarized as follows:

### A. Class Definition

The "Settlement Class" is defined as:

> [A]ll Persons with a Michigan street address who subscribed directly to Maxim for receipt of a *Maxim* magazine to be delivered to a Michigan street address between May 15, 2016 and July 30, 2016.[1]

Agreement ¶ 1.32.

### B. Monetary Relief

Maxim shall establish a $228,165 non-reversionary Settlement Fund, from which each Settlement Class Member who does not exclude him or herself shall receive a *pro rata* cash payment, estimated to be approximately $53, after payment of notice and administrative expenses, attorneys' fees and costs, and service awards to the Class Representatives. *Id.* ¶¶ 1.34,

---

[1] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

2.1.  No portion of the Settlement Fund will revert back to Defendant.  *Id.* ¶ 2.1.

### C.   Release

In exchange for the $228,165 payment, Maxim and each of its related and affiliated entities as well as all "Released Parties," as defined in ¶ 1.27 of the Settlement, will receive a full release of all claims arising out of or related to Maxim's disclosure of its Michigan customers' magazine subscription information.  *See id.* ¶¶ 1.26-1.28.

### D.   Notice And Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement.  *Id.* ¶¶ 1.30, 1.34.

### E.   Service Awards

In recognition for their efforts on behalf of the Settlement Class, Maxim has agreed that Plaintiffs may receive, subject to Court approval, service awards of up to $5,000 each from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives.  Maxim will not oppose any request limited to this amount.  *Id.* ¶ 8.3.

### F.   Attorneys' Fees, Costs, And Expenses

Maxim has agreed that the Settlement Fund may also be used to pay Class Counsel reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.  *Id.* ¶¶ 1.34, 8.1.  Class Counsel has agreed to petition the Court for attorneys' fees of no more than one-third of the Settlement Fund, and Defendant has agreed not to oppose any request limited to this amount.  *Id.* ¶ 8.1.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

Plaintiffs seek preliminary approval, which requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116.

If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, *4 (S.D.N.Y. July 27, 2007); *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in

mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations . . .") (internal quotations omitted).

This first step in the settlement process simply allows notice to issue to the class and for class members to object or opt-out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Although the Court's task on this motion is merely to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, or are neutral.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019).  The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ.

P. 23(e)(2).  The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell* factors, and

the Rule 23(e)(2) factors do not displace the *Grinnell* factors.  *In re Payment Card Interchange*

*Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019)

("There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which

complement, rather than displace each other.")

        **A.**    **The *Grinnell* Factors**

           **1.**    **Litigation Through Trial Would Be Complex, Costly,
And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant

expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently

complex and settlement avoids the costs, delays and multitude of other problems associated with

them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y.

2000).  Courts have consistently held that, unless the proposed settlement is clearly inadequate,

its acceptance and approval are preferable to continued complex litigation with uncertain results.

*TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981).

This case is no exception.  As discussed above, the Parties have engaged in motion

practice, written discovery, and extensive settlement negotiations.  Fraietta Decl. ¶¶ 6-26.  The

next steps in the litigation would include depositions of the Parties, third-party discovery, and

contented motions for summary judgment and class certification, which would be at minimum

costly and time-consuming for the Parties and the Court, and would involve a risk that a

litigation class would not be certified, in which case class members would recover nothing at all.

Maxim had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiffs are aware that Maxim would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Maxim's agents), that Maxim also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Maxim "at retail," as is required to come under the scope of the statute. Plaintiffs and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns. *Id.* ¶ 33.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class on summary judgment, at trial, or on appeal. Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

### 2.    The Reaction Of The Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet issued to the Class, it is not possible to gauge the reaction of the Class now. Prior PPPA settlements suggest that the Class will react favorably.

### 3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5

(S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

As discussed above, the Parties have conducted both formal and informal discovery into areas such as the class size, Defendant's purported notices of the disclosures, and the recipients of Defendant's alleged unlawful disclosures.  *See supra*; *see also* Fraietta Decl. ¶¶ X-Y.  Class Counsels' experience in similar matters, as well as the efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4.    Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 And 5)

Although Plaintiffs' case is strong, it is not without risk.  Defendant has made clear that it would move for summary judgment on various issues and vigorously contest the certification of a litigation class.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *Id.* at 177 (internal quotations omitted).

In the context of this litigation, Plaintiffs face risks in certifying a class and overcoming Maxim's summary judgment motion.  Moreover, further litigation will only delay relief to the Class Members.  The proposed Settlement alleviates these risks and provides a substantial benefit to the Class in a timely fashion.  These *Grinnel* factors thus favor preliminary approval.

### 5.    Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present.  The Court has not

yet certified the proposed Class and such a determination would be reached only after voluminous discovery is completed, Phase I summary judgment motions are briefed and decided, and exhaustive class certification briefing is filed.  Maxim would likely argue that individual questions preclude class certification.  Maxim would also likely argue that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable.

Should the Court certify the class, Mxim would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process.  The proposed settlement eliminates this risk, expense, and delay.  This factor weighs in favor of preliminary approval.

### 6.   Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While Maxim could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  Thus, at worst, this factor is neutral.

### 7.   The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those

originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, Class Counsel estimates that each Class Member will receive $53 in cash.  In addition, Maxim has agreed to pay the costs of notice and administration as well as reasonable counsel fees, plus costs and expenses for Class Counsel from the all-in fund established by the Settlement.  Agreement ¶¶ 1.34, 8.1.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Moreover, where – as here – a settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, *5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

> **B.   The Rule 23(e)(2) Factors**
>
>> **1.   The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries":  allegedly having their personal reading information disclosed by Maxim in violation of the PPPA.  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  "Because of these injuries, plaintiffs have an interest in vigorously

pursuing the claims of the class." *Id.* (internal quotations omitted). Thus, this Rule 23(e)(2) factor weighs in favor of preliminary approval.

### 2.     The Settlement Was Negotiated At Arm's-Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted). Here, both counsel for Plaintiffs and counsel for Defendant are experienced in class action litigation and engaged in protracted settlement negations, including an in-person settlement meeting. Accordingly, this Rule 23(e)(2) factor has been met.

### 3.     The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors . . .  including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. As noted *supra*, the Settlement has met each of these *Grinnell* factors.

As to "the effectiveness of any proposed method of distributing relief to the class," "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card Interchange Fee and Merchant*

*Discount Antitrust Litig.*, 330 F.R.D. at 40.  Here, under the terms of the Settlement, Settlement Class Members will <u>automatically</u> receive a *pro rata* cash payment of approximately $53. Agreement ¶ 2.1.  Thus, Settlement Class Members need not file any claims to receive relief; they will simply receive it automatically.  This plan was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695 (internal quotations omitted).

As to "the terms of any proposed award of attorney's fees," Plaintiffs' counsel will apply for attorneys' fees "not to exceed one-third of the Settlement Fund."  Agreement ¶ 8.1.  Courts in this Circuit routinely approve fee requests for one-third of a common fund.  *See, e.g., Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund).  Indeed, as courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] . . . typically pay . . . of their recoveries under private retainer agreements."  *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011).

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement.

16

In light of the foregoing, the Settlement provides adequate relief to the Class under Rule 23(e)(2)(C).

### 4.      The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 47. The Settlement distributes relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable.  *Id.*; *see also Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* distribution plan "appears to treat the class members equitably . . . and has the benefit of simplicity").  Thus, this Rule 23(e)(2) factor is weighs in favor of approval.

* * *

Because the Settlement is, on its face, "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval

## II.      CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the

settlement class, and appoint Bursor & Fisher, P.A. and Hedin Hall LLP as Class Counsel and the Named Plaintiffs as the class representatives.

As discussed below, all of the certification requirements for settlement purposes are met and Maxim consents to provisional certification. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC,* 55 F.3d at 784.

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class

> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon*, 150 F.3d at 1019. "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Maxim's records, the proposed Settlement Class is comprised of approximately 2,173 persons with a Michigan street address who subscribed directly to Maxim for receipt of a *Maxim* magazine to be delivered to a Michigan street address between May 15, 2016 and July 30, 2016. Fraietta Decl. ¶ 28. There, is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B. Commonality

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth.*

19

*Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).

There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

    Here, Plaintiffs allege that the common contention on which the claims of all class members depends is that Maxim disclosed each of its customers' protected personal reading information to third parties in violation of the PPPA.  Plaintiffs contend that determination of the truth or falsity of this contention can be made on a class wide basis and will resolve an issue – the key issue in the case – central to each class member's claims at once.

    Determining the truth or falsity of this common contention raises numerous common questions that track the elements of a PPPA claim.  Numerous courts considering settlement classes in the context of PPPA claims have agreed. *See, e.g.*, *Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10 (S.D.N.Y. Oct. 17, 2017); *Kinder v. Meredith Corp.*, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016).  Plaintiffs contend that the central factual and legal questions in the case can be determined on a class-wide basis using the same evidence regarding Maxim's practices.  *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 532–534 (E.D. Mich. 2015) (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class").

    Several federal courts have similarly held that cases like this one – in which defendants are accused of uniformly disclosing information protected by a privacy statute – raise common issues of fact or law.  *See, e.g., Coulter-Owens*, 308 F.R.D. at 532–534; *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question –

whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

### C.    Typicality

The next requirement – typicality – requires that a class representative has claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2).  Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007).

Here, Plaintiffs allege that Maxim's disclosure of their subscription information is not a one-off situation unique to them, but rather part of Maxim's alleged business of disclosing its customers' subscription information to third parties without consent.  FAC ¶¶ 1-3, 6, 43-50.  It is Plaintiffs' contention that no matter the person – whether it be Plaintiffs or other members of the putative class – the disclosures are alleged to be made in the exact same manner and for the exact same purpose.  And, because Plaintiffs allege that such conduct violates the PPPA, which provides identical statutory damages to all members of the Settlement Class, their claims are

typical of the other putative class members.  Accordingly, by pursuing their own claims in this matter, Plaintiffs will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See, e.g.*, *Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10; *Coulter-Owens*, 308 F.R.D. at 534–35; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (Rakoff, J.) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

      **D.**      **Adequacy Of The Named Plaintiffs**

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiffs – like each and every one of the Settlement Class Members – are Michigan customers that purchased a magazine subscription from Maxim and then allegedly had their subscription information disclosed to third parties without her consent.  FAC ¶¶ 10-11, 43-50.  Thus, Plaintiffs and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA.  As such, Plaintiffs do not have any interest antagonistic to those of the proposed Settlement Class and their pursuit of this litigation should be clear evidence of that.

Likewise, proposed Class Counsel – Bursor & Fisher, P.A. and Hedin Hall LLP – have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Fraietta Decl. ¶¶ 29-30.  They regularly engage in major complex litigation involving consumer privacy, including recent PPPA cases, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country.  *Id.; see* Firm Resumes of Bursor & Fisher, P.A. and Hedin Hall LLP, attached to the Fraietta Declaration as Exhibits B-C; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims.  …  The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.").

Further, proposed Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, aggressively pursuing those claims, conducting both formal and informal discovery, participating an in-person settlement meeting, and ultimately, negotiating a favorable settlement for the Class.  Fraietta Decl. ¶¶ 4-26.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

23

E.      **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. That Plaintiffs easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

1.      **Common Questions Predominate**

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there allegedly was a common course of conduct engaged in by Maxim. In these circumstances, courts find, particularly for purposes of settlement that there is

24

predominance of common questions over individual issues.  *See Taylor*, 7:16-cv-01812, Dkt. 75 at ¶ 10; *see also In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I"*) (citing numerous other cases).

### 2.    A Class Action Is A Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[2]

Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims.  *See Hanlon*, 150 F.3d at 1023.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the settlement class members' claims.

### III.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly

---

[2] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this

determination, the Court considers proposed Class Counsel's:  (1) work in identifying or

investigating the potential claim, (2) experience in handling class actions, other complex

litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and

(4) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

        As discussed above, proposed Class Counsel has extensive experience in prosecuting

consumer class actions in general, and privacy class actions specifically, including pursuant to

the PPPA.  *See supra*, at 23.  And as a result of its zealous efforts in this case, proposed Class

Counsel have secured a favorable settlement.  Thus, the Court should appoint Bursor & Fisher,

P.A. and Hedin Hall LLP as Class Counsel.

## IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

        Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the

court must direct to class members the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ.

P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Rule 23(e)(1) similarly

provides that "[t]he court must direct notice in a reasonable manner to all class members who

would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  The substance of the notice to the

settlement class must describe in plain language the nature of the action, the definition of the

class to be certified, the class claims and defenses at issue, that class members may enter an

appearance through counsel if so desired, that class members may request to be excluded from

the settlement class, and that the effect of a class judgment shall be binding on all class members.

*See* Fed. R. Civ. P. 23 (c)(2)(B).  Notice is "adequate if it may be understood by the average

class member."  *Newberg*, § 11:53 at 167.

        Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the

requirements of both Rule 23 and Due process.  First, the Settlement Administrator will send direct notice by postal mail to all Settlement Class Members for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member.  Agreement ¶ 4.1(b)(ii); Agreement Ex. B.  If more than one postal address is identified, the Settlement Administrator will send the postal mail notice to both addresses, and each notice will indicate the address to which the Settlement Class Member's cash award check will be sent.  *Id.* ¶ 4.1(b)(iii).  Next, for any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address, the Settlement Administrator will send notice via email.  *Id.* ¶ 4.1(b)(iv); Agreement Ex. A.  Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Agreement Ex. C), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online, or an updated postal address.  *Id.* ¶ 4.1(c).  Finally, the Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id.* ¶ 4.1(d).

In sum, the proposed methods for providing notice to the Class comports with both Rule 23 and Due Process, and thus, should be approved by the Court.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully requests that the Court grant their Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted herewith.

Dated:  May 7, 2020

Respectfully submitted,

By:  */s/ Philip L. Fraietta*
     Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  jmarchese@bursor.com
       pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin*
1395 Brickell Avenue, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinhall.com
     *Admitted *Pro Hac Vice*

*Proposed Class Counsel*