UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK HUFFORD and JOHN WISBISKI, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>MAXIM INC.,<br><br>      Defendant. | Civil Action No. 19-cv-04452-ALC-RWL |

**DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

  1.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs Patrick Hufford and John Wisbiski ("Plaintiffs") in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

  2.  I make this declaration in support of Plaintiffs' motion for final approval of class action settlement filed herewith.

  3.  Attached hereto as **Exhibit A** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

  4.  On May 15, 2019, Luther Huguelet filed a putative class action on behalf of Maxim subscribers alleging violations of the Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711, *et seq.* (the "PPPA"). (Dkt. 1).

5. In response to the complaint, on August 23, 2019, Defendant filed an Answer denying the allegations generally and raising 13 affirmative defenses. (Dkt. 21).

6. That same day, Defendant also filed a letter requesting a pre-motion conference on an anticipated motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. 22).

7. On August 28, 2019, Mr. Huguelet filed a response to Defendant's letter. (Dkt. 25).

8. On September 18, 2019, the Parties conducted a discovery planning conference pursuant to Fed. R. Civ. P. 26(f).

9. On September 24, 2019, the Parties filed a Joint Case Management Statement. (Dkt. 28).

10. On October 1, 2019, the Court held an Initial Case Management Conference.

11. On October 8, 2019, Mr. Huguelet filed a letter-motion for leave to file an amended complaint to add Plaintiffs Hufford and Wisbiski as named plaintiffs in this case. (Dkt. 36).

12. On October 18, 2019, Defendant filed a letter brief in opposition to Mr. Huguelet's letter-motion to amend. (Dkt. 42).

13. On October 24, 2019, the Court granted Mr. Huguelet's letter-motion for leave to file an amended complaint. (Dkt. 43).

14. On October 25, 2019, the Court denied Defendant's request for a pre-motion conference concerning its anticipated motion for judgment on the pleadings without prejudice, in light of the order granting leave to amend. (Dkt. 44).

15. On October 30, 2019, Plaintiffs filed a First Amended Complaint removing Mr.

Huguelet as a Class Representative in this case. (Dkt. 45).

16. On November 13, 2019, Defendant filed an Answer to Plaintiffs' First Amended Complaint denying the allegations generally and raising 13 affirmative defenses. (Dkt. 48).

17. On November 19, 2019, Plaintiffs served their First Set of Request for Production of Documents and their First Set of Interrogatories.

18. On December 13, 2019, the Parties exchanged their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

19. On December 20, 2019, Defendant served its First Set of Request for Production of Documents and its First Set of Interrogatories.

20. On January 21, 2020, Plaintiffs served Objections and Responses to Defendant's First Set of Request for Production of Documents and First Set of Interrogatories.

21. From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.

22. To that end, on January 9, 2020, counsel for the Parties met in-person for approximately 1 hour to discuss potential resolution. During the meeting, counsel for the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, and details of Plaintiffs' subscription histories. While counsel engaged in good faith negotiations, which at all times were at arms'-length, they failed to reach an agreement that day. However, the Parties agreed that further negotiations would be beneficial, and agreed to continue their negotiations over the coming weeks.

23. As part of their continued settlement negotiations, the Parties exchanged further informal discovery, including on issues such as the size and scope of the putative class.

24. Given that the information exchanged would have been the same information

produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

25. Over the next few weeks, the Parties engaged in settlement negotiations and on February 18, 2020, after making substantial progress in those negotiations, filed a joint letter-motion requesting a 30-day stay of discovery to focus their efforts on settlement discussions. (Dkt. 56). The Court granted that request the same day. (Dkt. 57).

26. On March 22, 2020, after engaging in continued negotiations, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet.

27. The next day, the Parties filed a joint letter to inform the Court that they had reached agreement on all material terms.

28. The resulting $228,165 Proposed Settlement secures excellent relief for the Settlement Class. Based on Maxim's records the Settlement Class includes approximately 2,111 persons with a Michigan street address who subscribed directly to Maxim for receipt of a *Maxim* magazine to be delivered to a Michigan street address between May 15, 2016 and July 30, 2016. With a $228,165 non-reversionary Settlement Fund, each Class Member who does not exclude him or herself from the Settlement should receive a *pro rata* cash payment of approximately $53.

29. My firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached hereto as **Exhibit B**). My firm regularly engages in major complex litigation involving consumer privacy, including recent PPPA cases such as *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 (S.D.N.Y.); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 (S.D.N.Y.); *Moeller v. Advance

*Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671 (S.D.N.Y.); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, (S.D.N.Y.); and *Moeller v. American Media, Inc.*, No. 16-cv-11367 (E.D. Mich.) and, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. My firm has also been recognized by courts across the country for its expertise. *See* Ex. B; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Civil Action No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

30.     My co-counsel, Hedin Hall LLP, also has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Hedin Hall LLP, a true and accurate copy of which is attached hereto as **Exhibit C**). The firm has been appointed class counsel by courts throughout the country, including in consumer protection class actions. *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming.").

31.     The Parties agreed to the terms of the Settlement through experienced counsel

who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's-length.

32. Plaintiffs and Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

33. Plaintiffs and Class Counsel are also mindful that absent a settlement, the success of Maxim's various defenses in this case could deprive the Plaintiffs and the Settlement Class Members of any potential relief whatsoever. Maxim is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiff and Class Counsel are also aware that Maxim would continue to challenge liability, as well as assert a number of defenses. Maxim had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiffs are aware that Maxim would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Maxim's agents), that Maxim also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Maxim "at retail," as is required to come under the scope of the statute. Plaintiffs and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due

6

process concerns.

34. Plaintiffs and Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

35. On August 13, 2020, the Court granted Plaintiffs' Motion for Preliminary Approval. *See* Dkt. 66.

36. Since the Court granted preliminary approval, Plaintiff has worked with the Settlement Administrator, JND Legal Administration ("JND"), to carry out the Court-ordered notice plan. As detailed in the accompanying Declaration of Jennifer M. Keough, of JND, the Court-ordered notice plan has been carried out in its entirety.

37. Attached hereto as **Exhibit D** is a true and correct copy of the transcript from the January 31, 2018 Fairness Hearing in *Taylor v. Trusted Media Brands, Inc.,* Case No. 16-cv-01812-KMK (S.D.N.Y.).

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 27th day of October 2020 at Yorktown Heights, New York.

                                                      */s Philip L. Fraietta*
                                                         Philip L. Fraietta